Henry D. Madsen | ISB No.: 4428
MADSEN LAW OFFICES P.C.
250 Northwest Blvd., Ste. 208
Coeur d'Alene, ID 83814
Phone: 208-664-8080
Fax: 208-664-6258
*madsenlawcda@outlook.com*

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACK AYERS AND JOANN AYERS, husband and wife,<br><br>                    Plaintiffs,<br><br>Vs.<br><br>SHOSHONE COUNTY; SHOSHONE COUNTY PUBLIC WORKS DEPARTMENT: JESSICA STUTZKE as DIRECTOR and in her individual and official capacities; SHOSHONE COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the STATE OF IDAHO, and DAVID DOSE as COMMISSIONER and in his individual and official capacities, JEFF ZIMMERMAN as COMMISSIONER and in his Individual and official capacities, and OWEN CLANCY,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br>**(42 U.S.C. §§ 1983, 1985, 1988 and 42 U.S.C. §6971)**<br>**JURY TRIAL DEMANDED** |

COMES NOW, Plaintiffs ZACK AYERS, (hereinafter "ZAYERS") AND JOANN

AYERS, (hereinafter "JAYERS"), husband and wife, by and through their attorney of record,

HENRY D. MADSEN of MADSEN LAW OFFICES, P.C., and for a cause of action against the

above-named Defendants, complains and alleges as follows:

# I. INTRODUCTION

1. This is an action for wrongful termination in retaliation against Plaintiff for reporting violations of environmental laws, mismanagement of county resources, and for slander and defamation by Defendants of Plaintiff ZAYERS.

2. This action is brought pursuant to 42 U.S.C §1983, et seq, the 1st Amendment to the United States Constitution, Article I Section 9 of the Idaho Constitution, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6971, and 28 USC §4101, and Idaho Common Law as well as IRCP 9(1).

3. This is a civil action seeking compensatory and punitive damages against the Defendants for retaliatory termination of Plaintiff ZAYERS as a result whistle blower claims protected by the 1st Amendment to the United states Constitution, depriving the Plaintiffs of rights secured by the United States Constitution and the laws of the United States including the laws of the State of Idaho and the Idaho Constitution.

4. This is also an action for wrongful termination in retaliation against Plaintiff for reporting violations of environmental laws under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6971, including the improper disposal of mine waste with high lead content in Shoshone County, Idaho.

5. Defendants terminated Plaintiff's employment because Plaintiff engaged in protected whistleblower activity, specifically reporting illegal disposal practices by HECLA MINING COMPANY (hereinafter HECLA) to PANHANDLE HEALTH (hereinafter PH), the IDAHO DEPARTMENT OF ENVIRONMENTAL QUALITY (hereinafter IDEQ) and the ENVIRONMENTAL PROTECTION AGENCY (hereinafter EPA) which are the appropriate regulatory authorities for such reports.

**6.**   Plaintiff is seeking compensatory and punitive damages against Defendants for retaliatory termination of Plaintiff's employment under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6971.

**7.**   Defendants, SHOSHONE COUNTY (hereinafter SC); SHOSHONE COUNTY PUBLIC WORKS DEPARTMENT (hereinafter "SCPW"), JESSICA STUTZKE (JSTUTZKE) as DIRECTOR and in her individual and official capacities,  and SHOSHONE COUNTY BOARD OF COUNTY COMMISSIONERS, (hereinafter SCBCC) a political subdivision of the STATE OF IDAHO, and COMMISSIONERS DAVID DOSE (DDOSE), and JEFF ZIMMERMAN (JZIMMERMAN) in their capacity as COMMISSIONER and in their INDIVIDUAL capacity, SHOSHONE COUNTY (hereinafter SC), and OWEN CLANCY (hereinafter OCLANCY) acted in their individual capacity and or conspired together to deprive the Plaintiff of his Constitutional rights.

**8.**   As the acts of the Defendants violated the Plaintiff's rights pursuant to the United States Constitution and the Idaho Constitution, Defendant seeks reimbursement of his attorney fees and cost pursuant to 42 USC §1988 and Idaho Code 12-120, 12-121, and IRCP 54.

**9.**   Plaintiff, ZAYERS, claims the Defendants wrongfully terminated his employment in violation of his right to freedom of speech as a citizen of the United States and the State of Idaho for reporting to the EPA and or DEQ and or PH with regard unlawful dumping of mine waste on Shoshone County public roads and streams to include the South Fork of the Coeur d'Alene River in violation of the Resources Conservation Recovery Act.

**10.**   Defendants in their official capacity and individual capacity slandered, libeled, and defamed Defendant and ZAYERS, and all conspired to do so.

**11.** Defendant SC, as the employer of Defendants, was responsible for the supervision, education, and training of all Defendants and therefore is respondeat superior of their actions and conduct and therefore responsible joint and several for the actions of its employees.

**12.** Plaintiff ZAYERS was employed by Shoshone County and or SCPW as the District 3 Road Supervisor.

**13.** Defendant SC is a political subdivision of the State of Idaho.

**14.** Defendant SCPW is a department of SC.

**15.** Defendant SCBCC is the final policymaking authority for SC regarding employment decisions.

**16.** Defendant JSTUTZKE was at all relevant times the Director of SCPW for SC and exercised authority over discipline and termination.

**17.** Defendants DDOSE and JZIMMERMAN were at all relevant times Shoshone County Commissioners and final policymakers for employee actions.

**18.** At all times relevant to this action, Defendants CS and or SCPW and or SCBCC were persons and/or entities acting under color of state law and were the employer, principal, and/or supervisor of JSTUTSKE and or DDOSE and or JZIMMERMAN.

**19.** At all times relevant herein, Defendant JSTUTZKE was an employee, agent, and/or servant of SC and or SCPW and or SCBCC and was acting within the course and scope of her employment and/or agency.

**20.** At all times material hereto OCLANCY was an employee of SC and worked under JSTUTZKE at SCPW in the District 3 shop and acted in concert with SC, SCBCC, DDOSE, JZIMMERMAN, and or JSTUTSKE to slander, libel, and defame ZAYERS in order to

support, with evidence, the interference of employment and or the retaliatory termination of ZAYERS.

21. In furtherance of the conspiracy, OCLANCY took photographs of ZAYERS while at the SCPW District 3 shop  and took photographs of a boat and claimed that ZAYERS was working on his own personal projects on County time and, in so doing, provided false documents and false information to JSTUTSKE and or the other Defendants with the intent to support the interference of employment and or termination of ZAYERS employment and as requested by the other Defendants.

22. At all times material hereto, by their actions, Defendants interfered with the employment of ZAYERS and terminated his employment in retaliation for his reports of misuse and or mismanagement of County, State, and or Federal grants and or taxes; for reports as to HECLA's contamination of the Shoshone County roads, South Fork of the Coeur d'Alene drainage and the private properties and residences of Shoshone County.

23. The acts, omissions, conduct, and wrongful behavior of JSTUTZKE and or OCLANCY and or DDOSE and or JZIMMERMAN, as alleged in this Complaint, were committed in the performance of job-related duties, during authorized work hours, at authorized locations, and in furtherance of the business, objectives, and/or interests of Defendant SC, SCBCC and or SCPW and in furtherance of a conspiracy against ZAYERS.

24. At no time relevant was OCLANCY, JSTUTZKE, DDOSE, or JZIMMERMAN acting on a personal frolic or outside the scope of employment.

25. SC, and or SCBCC, and or SCPW had the right and ability to control the conduct of OCLANCY, JSTUTZKE, DDOSE, and or JZIMMERMAN, including the manner and means by which such conduct was performed.

26. Pursuant to the doctrine of respondeat superior, and under applicable federal and Idaho law, Defendants, SC, SCBCC, and or SCPW are vicariously liable for the acts, omissions, negligence, recklessness, and/or other wrongful conduct of OCLANCY, JSTUTZKE, DDOSE, and or JZIMMERMAN alleged herein.

27. As a direct and proximate result of the acts and omissions of OCLANCY, JSTUTZKE, DDOSE, and or JZIMMERMAN, for which, SC, SCBCC, and or SCPW are vicariously liable, Plaintiff suffered damages as alleged in this Complaint.

28. In addition, SC, SCBCC, and or SCPW knew or should have known of the unconstitutional and/or unlawful conduct of OCLANCY, JSTUTZKE, DDOSE and or JZIMMERMAN, failed to take reasonable corrective action, and thereby ratified, condoned, and approved said conduct.

29. Plaintiff, JOANN AYERS (hereinafter JAYERS), is the lawful spouse of Plaintiff ZAYERS and resides in Shoshone County.

30. JAYERS is joined in this action solely for the purpose of recovering damages arising from Defendants' unlawful conduct, including loss of household income, loss of employment salary and benefits, and loss of consortium.

31. JAYERS as a result of the wrongful termination and or interference of employment and defamation by Defendants of ZAYERS, she and her family have been damaged for loss of ZAYERS income and employee benefits to include wages and medical/dental/optical insurance for ZAYERS, her and her family and is seeking compensatory and punitive damages against the Defendants to include loss of consortium.

## II. JURISDICTION AND VENUE

32. This action is brought pursuant to 42 U.S.C §1983 and 1988, alleging that the Defendants acted in both their individual and official capacities under the color of law, depriving the Plaintiff of his rights, privileges, and immunities as guaranteed by the 1st and 14th Amendment to the United States Constitution.

33. Jurisdiction further arises under 42 U.S.C §6971, which grants federal courts authority to hear civil actions for retaliation under RCRA.

34. Further, this action is brought pursuant to the Idaho Constitution, Article I Section 9; Idaho Common Law for Slander, Libel, Defamation, Conspiracy, Interference of Employment, and Retaliatory Termination.

35. Venue is proper in the District of Idaho because the events giving rise to this complaint occurred in Shoshone County, Idaho, and Defendant conducts business there and therefore pursuant to 28 U.S.C. § 1331 and §1343.

36. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District.

37. All acts and omissions occurred in the Idaho District of the Federal Court.

### III. PARTIES

38. Plaintiff realleges all paragraphs above set out herein.

39. Plaintiff ZAYERS, who was a public employee for the SCPW, is a male citizen of the United States of America and resides in the Idaho District of the Federal Court and is currently a resident of Shoshone County, State of Idaho, and has resided there for more than six (6) months preceding the date on which the claim arose.

40. Plaintiff JOANN AYERS (hereinafter JAYERS) is the wife of ZAYERS is a female citizen of the United States of America and resides in the Idaho District of the Federal Court and is

currently a resident of Shoshone County State of Idaho and has resided there for more than six (6) months preceding the date on which the claim arose and joins this action solely for her claims for loss of consortium, loss of household income, loss of Shoshone County benefits, and emotional distress caused by Defendant's wrongful acts.

41. Defendant SCPW, at all times material hereto, is a department of SC, State of Idaho and is under the supervision and control of SC and or the SCBCC.

42. Defendant, JSTUTZKE as DIRECTOR and in her individual capacity, is the director of the SCPW and is supervised by the SCBCC, is a female citizen of the United States of America and resides in the Idaho District of the Federal Court and is currently a resident of Shoshone County State of Idaho and has resided there for more than six (6) months preceding the date on which the claim arose.

43. Defendant, JSTUTZKE, supervised ZAYERS and was instrumental and conspired with OCLANCY DDOSE and or JZIMMERMAN in the false allegations made toward ZAYERS and wrongfully interfered and terminated his employment as a result of his protected speech.

44. At all times material to this Complaint, JSTUTZKE was the director of the SCPW and was acting under color of law.

45. At all times material hereto, SC is a political entity formed under the laws of the State of Idaho and is seated in Wallace, State of Idaho, and was acting under color of law as to the claims against it.

46. OCLANCY was employed by JSTUTZKE to work at the Shoshone County District 3 shop with the direction to develop evidence against ZAYERS in support of interference of his employment and retaliatory termination of ZAYERS and conspired with JSTUTSKE, DDOSE, and or JZIMMERMAN as to the same.

47. OCLANCY is a male citizen of the United States of America and resides in the Idaho District of the Federal Court and is currently a resident of Shoshone County, State of Idaho, and has resided there for more than six (6) months preceding the date on which the claim arose.

## IV. FACTUAL HISTORY

48. Plaintiff realleges all prior paragraphs.

49. ZAYERS has been employed by SC since May 13, 2013, and maintained good standing in his professional capacity, rising to the SCPW District 3 Road Supervisor at the time of his wrongful termination on December 21, 2023.

50. At all relevant times hereto, ZAYERS and JAYERS are citizens of Shoshone County, State of Idaho, and taxpayers thereof, and as such have a private interest in assuring that SC and the officials and their employees are not committing waste and protecting them and other citizens of Shoshone County from the unlawful actions by others.

51. ZAYERS worked his way up to the lead position road supervisor at the District 3 shop and prior to his supervision by JSTUTZKE he worked under the supervision of three prior public works directors and had annual performance reviews that praised his performance and he often was instrumental in saving the county taxpayers money.

52. ZAYERS duties consisted only of those appertaining to the District 3 shop which include monitoring waste disposal practices which would affect the safety of SCPW employees and the citizens of Shoshone County to include reporting to SC, IDEQ, PH and or the EPA and to prepare reports and insure compliance with federal environmental regulations, including RCRA.

53. During the course of employment, ZAYERS discovered that HECLA was disposing of mine tailings with dangerously high lead content in violation of federal and state environmental laws.

54. Plaintiff reported these violations to HECLAS' environmental compliance department; SCPW Director JSTUTZKE and the EPA, in accordance with RCRA §7001 et seq., providing evidence of high lead content and improper disposal methods.

55. After making these reports, ZAYERS experienced retaliation, including being humiliated by JSTUTZKE, threats of termination, suspension of his duties, and ultimately termination on December 21, 2023 shortly after making the protected reports.

56. SC, SCBOCC, SCPW, JSTUTZKE, DDOSE, and JZIMMERMAN stated reason for termination was pretextual and false and unrelated to ZAYERS' job performance and was directly linked to Plaintiff's whistleblower activity.

57. Plaintiff has complied with all statutory prerequisites under 42 U.S.C. § 6971, including reporting the violations to the appropriate agency as set out further below and filing this complaint within the required time frame.

58. JSTUTZKE was employed by JIM CASON (hereinafter CASON) as his secretary while he was the SCPW Director and when he resigned on January 2023, JSTUTZKE was promoted to SCPW Director in his stead on or about January 2023.

59. At the time of her appointment, JSTUTZKE had no experience for the position of SCPW Director and it is of information and belief that she was appointed in order to direct public works contracts to CASON and his new construction company J.C. MacGyver, LLC which was formed under the laws of the State of Idaho on September 12, 2022.

60. ZAYERS, as a concerned citizen of Shoshone County, informed JSTUTZKE of misconduct of a Marble Creek Public Works Shop employee, and Road Supervisor, Rich Rauch that he was taking large quantities of diesel from the diesel tanks and Shoshone County equipment home and not returning the same.

61. ZAYERS began communicating to JSTUTZKE as a private citizen that Mr. Rauch was taking and misusing county property for his own personal use.

62. On or about August 2023, ZAYERS, as a concerned citizen of Shoshone County and while on his own personal time made a complaint to JSTUTZKE and the SBCC, DDOSE that JSTUTZKE was mismanaging public funds and or property as a result of not having adequate supervision over Rauch.

63. Said complaints were made to JSTUTZKE and SBCC Commissioner DDOSE after work hours on or about the end of August of 2023.

64. After ZAYERS informed JSTUTZKE as to the theft by Rauch of the County diesel and misuse and personal use of County equipment, JSTUTZKE only replied "leave it alone ZACK".

65. SC approved and authorized repairs to the Tank Creek bridge and JSTUTSKY retained CASON to inspect and write a report as to the repairs needed for the bridge.

66. During his off-duty hours, on or about the beginning of August 2023, ZAYERS, as a private citizen, informed JSTUTZKE that her employing CASON to inspect the Tank Creek bridge was wrong because he did not have the qualifications for such inspections and further that CASON's inspection report was wrong and that his recommended repairs to the Tank Creek bridge would fail endangering he and his family and the citizens of Shoshone County who used that bridge.

**67.** On or about the beginning of August 2023, prior to the repair of the Tank Creek Bridge, ZAYERS, during his off-duty hours, as a private citizen, confronted JSTUTZKE about wasting Shoshone County funds in hiring CASON and stated to JSTUTZKE it was her duty to inspect the bridge and make recommendations as to the repair of same.  In reply JSTUTZKE informed ZAYERS to "leave it alone".

**68.** On or about November 2023, after confronting JSTUTZKE, ZAYERS, on his off-duty hours, informed SBCC commissioner DDOSE that he informed JSTUTZKE as to ROUCHE stealing Shoshone County diesel, tools and equipment from the SCPW Marble Creek Shop and the problems with hiring CASON for the inspection of the Tank Creek bridge and further for granting CASON the public works contract for replacing the Gem Bridge without publishing the contract to the public and opportunity for the public to present bids for the same.

**69.** ZAYERS, as a citizen and taxpayer of Shoshone County had a public interest in making sure the Tank Creek Bridge was safe and further that tax-payer funds and or federal grant funds were not wasted.

**70.** On or before February of 2023, while at home at Mullan, Idaho, ZAYERS and JAYERS witnessed multiple trucks owned by HECLA MINING COMPANY (hereinafter HECLA) transporting hazardous high lead mine waste/silica passing his residence located on Lucky Friday Road.

**71.** The HECLA trucks were uncovered and spreading the waste about the area as it became airborne causing the road, and residential houses and properties to include that of ZAYERS to become covered with the waste.

COMPLAINT.42 USC 1983-12

**72.** At all times material hereto, ZAYERS had renters who were residing at their residence who had two very young children-one newborn and one two-year-old.

**73.** The two-year old child who was able to go outside and play in the yard of ZAYERS' residence became sick and was falling down frequently and had other signs of lead contamination and her parents took her to a pediatrician who told them to take the child to PH to have her blood tested.

**74.** The child is a resident of Shoshone County, Idaho and as a result of frequent testing by PH, prior to the HECLA mine contamination, the child's lead blood levels were below what is allowed by the EPA.

**75.** After the HECLA contamination, the child's blood test came back with high concentrations of lead far exceeding what was allowed as a safe range.

**76.** ZAYERS reasonably believed HECLA'S conduct violated  federal environmental laws enforced by the EPA and Idaho State Laws enforced by the IDEQ and PH.

**77.** ZAYERS on his own time and not during working hours contacted HECLA employee, Clay Thomas, environmental project manager there and explained to him that HECLA trucks were passing his residence using Lucky Friday Avenue in Shoshone County Idaho with uncovered loads of mine waste tailings and depositing them on the Shoshone County roads which were also going into the South Fork of the Coeur d'Alene River.

**78.** ZAYERS is of information and belief that HECLA never attempted to cover their loads while transporting the mine waste to its mine waste dump using Shoshone County roads nor attempted to clean up the mine waste so ZAYERS began making reports to PH and JASON GUARDIPEE (hereinafter GUARDIPEE) who ZAYERS knew was acting for the EPA.

**79.**  At all times material hereto it was of information and belief that GUARDIPEE was the EPA contact in Shoshone County as to the superfund site as GUARDIPEE held himself out as the EPA contact, he trained SC employees as to the EPA rules and requirements for displacement of soils within the Shoshone County Superfund Site and  because GUARDIPEE had, in the past, directed ZAYERS to report to him as to any issues of hazardous mine waste and or EPA training for handling of the same.

**80.**  At all times material hereto, GUARDIPEE worked for PH and the EPA under a Memorandum of Agreement (hereinafter MOA).

**81.**  At all times material hereto the EPA, IDEQ, and PH were working together under the MOA and the EPA assigned certain responsibilities as to the Shoshone County Superfund site to PH and IDEQ through the MOA.

**82.**  That said MOA granted PH and the IDEQ the authority to take reports as to mine waste contamination and to investigate the same then report to the EPA.

**83.**  At all times material hereto GUARDIPEE was employed by PH and was assigned to address EPA training as to soil displacement and cleanup as well as to take reports from the citizens of Shoshone County of hazardous waste contamination and to investigate the same then report to the EPA as to said citizen reports and investigation reports.

**84.**  At all times material hereto, GUARDIPEE was to be the intermediary between PH and the EPA and to report to the EPA of reports of his investigations as to hazardous waste contamination.

**85.**  At all times material hereto, it was ZAYERS understanding that GUARDIPEE was the contact for all issues relating to the EPA to include notice of his wrongful termination by SC.

86. After informing STUTZKE of HECLA's failure to cover their loads and the contaminants they were releasing, she did nothing and rather than let HECLA continue to move their mine tailings uncovered on public roads, ZAYERS contacted the EPA GUARDIPEE and informed him as to what was occurring as to HECLA and the contamination of the Shoshone County roads and drainage system.

87. GUARDIPEE responded to ZAYERS that he would look into it.

88. Thereafter GUARDIPEE and two female individuals came to the area of the residence of ZAYERS and the two females informed ZAYERS that they were with PH and they were there to test the mine waste/silica which was covering the area.

89. ZAYERS had not heard from GUARDIPEE and or PH as to the test results and cleanup plans so he called GUARDIPEE multiple times leaving messages that HECLA was still transporting the mine waste uncovered and depositing it all over the area.

90. It is of information and belief that in the interim PH and or HECLA contacted STUTZKE and informed her of ZAYERS' report of HECLA contamination.

91. In response to the report by HECLA and or PH, JSTUTZKE called ZAYERS to her office and questioned him about the report of HECLA contamination and ZAYERS informed JSTUTZKE as to the same.

92. In response to the information from ZAYERS, JSTUTZKE responded that he was to "leave it alone" and that "someone will lose their job" referring to his making calls to the EPA and PH as well as HECLA as to the violations.

93. Shoshone County was awarded a federal grant, through LHTAC which allowed for the replacement of the Gem Bridge used for the crossing of Canyon Creek located at Gem, Idaho just north of Wallace Idaho in Shoshone County.

94.  The public was to be given notice to submit bids to install the bridge, however, JSTUTZKE did not publish the project but sent out several emails to targeted construction companies one of which was her prior boss CASON and although the bids were to be sealed it is of information and belief that JSTUTZKE informed CASON that if he wanted the bid he was to provide a bid below $50,000.00 as that was the ceiling for the requirement of publication.

95.  It is of information and belief that CASON bid the GEM bridge project at $49,500.00 and JSTUTZKE recommended to the SCBOCC to accept the CASON bid which the BOCC did and awarded the project to J.C. MacGyver, LLC on September 12, 2023.

96.  It is of information and belief that after awarding the project to CASON, JSTUTZKE changed the scope of the project allowing CASON to use county equipment and material and had Shoshone County employees operating Shoshone County equipment to haul County materials to install the bridge and paid the employees to haul for CASON on the weekend using County funds.

97.  ZAYERS contacted Commissioner DDOSE on his off time as to the illegal activities by JSTUTZKE as to the award of public works contracts without advertising publicly and opportunity for the public to submit bids as to the same and mismanaging the grant funds and using Shoshone County tax payor's money and materials to assist CASON and further as to Rich Rauch's theft of county diesel, tools and equipment.

98.  The report by ZAYERS to Commissioner DDOSE was made by ZAYERS on his own time and not during working hours.

99.  DDOSE took the report as to the above illegal activities and mismanagement of tax payor funds.

100.  Shortly after making the reports, Following Plaintiff's protected whistleblowing activity, Defendants engaged in a coordinated effort to manufacture false and misleading information to justify retaliatory discipline and termination.

101.  Defendants, including JSTUTZKE, DDOSE, and JZIMMERMAN, knowingly instructed and encouraged OCLANCY, a fellow employee at the District 3 Public Works shop, to create, exaggerate, or falsely report allegations against ZAYERS.

102.  Defendants knew or should have known that the information provided by OCLANCY as set out below was false, misleading, or taken out of context, and nevertheless relied upon it to support adverse employment actions against ZAYERS.

103.  Defendants' actions were not isolated incidents, but part of an ongoing pattern designed to discredit ZAYERS, undermine his authority as District 3 Road Supervisor, and retaliate against him for reporting misconduct.

104.  As a direct result of Defendants' actions, ZAYERS was subjected to increased harassment, intimidation, false accusations, and a working environment permeated with hostility and fear of reprisal.

105.  Defendants' conduct made ZAYERS working conditions intolerable and materially altered the terms and conditions of his employment.

106.  Defendants ultimately relied upon the fabricated and retaliatory information to terminate Plaintiff's employment on or about December 21, 2023.

107.  The stated reasons for Plaintiff's termination were pretextual and served as cover for unlawful retaliation.

108.  Two weeks after making the report to Commissioner DDOSE by ZAYERS, ZAYERS was called into JSTUTZKE's office and placed under administrative leave pursuant to the false

allegations conjured up by OCLANCY and Defendants to include but not limited that he was working on a boat on county time in the county shop which actually was owned by Jim Rolletto-the Shoshone County Engineer and being worked on by CASON while CASON was working as the SCPW Director and not ZAYERS, maintaining Shoshone County Ambulances without authorization and while working as the SCPW District 3 road supervisor, and hauling a lawn mower with a County pickup truck to use the lawn mower for County purposes at the Gene Day Park which is a Shoshone County Park.

109. JSTUTZKE falsely accused ZAYERS of using a County "skid steer" for his own personal use as the skid steer was sitting on the Hale Fish Hatchery property which is maintained by Shoshone County.

110. It is of information and belief that OCLANCY, JSTUTZKE, DDOSE and or JZIMMERMAN conspired together to develop the slanderous and libelous false information to defame ZAYERS in order to interfere with and terminate his employment in retaliation for his reporting as set out above.

111. On December 21, 2023, ZAYERS was terminated in violation of his Constitutional right to freedom of speech and the Resources Conservation Recovery Act for whistleblowing and has endured slander and defamation as to the false allegations that OCLANCY, JSTUTZKE, SC, SCBCC, DDOSE, and JZIMMERMAN levied against him in order to support their termination of him.

112. It is information and belief of ZAYERS that his efforts to call out the wasting of County assets and calling into question violations of the EPA by HECLA caused him to be terminated.

113. On December 21, 2023, ZAYERS called JSTUTZKE to see when he would be coming back to work and was told to come to the Shoshone County Commissioner's office where he met with JSTUTZKE and Commissioner JZIMMERMAN.

114. During the meeting JSTUTZKE stated to ZAYERS that she and the Commissioner's had met, and she had informed them of the issues relating to his continuing employment with SC and they all made a decision to terminate ZAYERS.

115. ZAYERS requested a meeting with all three Commissioners as to his termination and was told the decision was final, denying him a meeting as required by Shoshone County Personnel Policy Manual.

116. ZAYERS was not allowed to get his personal belongings at the SCPW District 3 shop for 2 weeks when Commissioner DDOSE and JSTUTZKE met him at the District 3 shop.

117. ZAYERS, while at the District 3 shop to pick up his belongings, asked Commissioner DDOSE for a meeting with all three Commissioners.

118. In response ZAYERS' request for a meeting, Commissioner DDOSE enquired if ZAYERS was seeking representation as to his termination and as ZAYERS responded in the affirmative Commissioner DDOSE stated he nor the other commissioners could speak with him further, again, denying him a hearing as to his termination.

119. Pursuant to the Shoshone County Personnel Policy Manual (hereinafter SCPPM) Paragraph XII page 33, ZAYERS acted with good faith when reporting the existence of waste of public funds, property or manpower, or of a violation or suspected violation of Idaho law or regulation of the County, state of Idaho or the United State of America.

120. The above reports to JSTUTZKE and Commissioner DDOSE were made at a time and manner which gave the County a reasonable opportunity to correct the waste or violation.

121. However, after ZAYERS made reports pursuant to the SCPPM, the County took adverse action in retaliation against ZAYERS an employee of Shoshone County and terminated him.

122. JSTUTSKE, SC, SCBOCC, SCPW, DDOSE, and JZIMMERMAN participated in, approved of, and or ratified the termination of ZAYERS.

123. ZAYERS' protected speech was the substantial and motivating factor in SC's actions.

124. The termination of the employment of ZAYERS after 10 years of stellar employment with the County with no record of reprimand was wrongful and in retaliation for exercising his First Amendment rights of the US Constitution and the Idaho Constitution Article I, Section 9.

125. On or about December 30, 2023, GUARDIPEE who ZAYERS knew to be the individual working for the EPA under a partnership agreement, the MOA, at the Kellogg office of IDEQ, was near the residence of ZAYERS when ZAYERS and JAYERS contacted him and informed GUARDIPEE  that as a result of his reporting to him that there was illegal dumping by HECLA his employment with Shoshone County was terminated.

126. GUARDIPEE told ZAYERS that he would look into it.

127. It was of further information and belief that GUARDIPEE worked for the EPA under the MOA because his office at the Kellogg IDEQ included in its signage the office of the EPA and since GUARDIPEE was the person who trained he and other Shoshone County employees as to the EPA rules and regulations with regard dirt removal and disturbance within the Bunker Hill Mining and Metallurgical Complex.

128. GUARDIPEE had not called ZAYERS so on January 17, 2024, ZAYERS called GUARDIPEE who answered the telephone and informed him that SC had terminated him

for reporting the unlawful dumping mine waste by HECLA and GUARDIPEE responded that he would look into it.

129. ZAYERS has never received a response as to the retaliatory termination of his employment with Shoshone County by SC as set out above by the EPA/GUARDIPEE.

130. As a direct and proximate result of Defendants' unconstitutional acts and conspiracy, Plaintiff ZAYERS suffered loss of employment, salary, benefits, and earning capacity.

131. As a direct and proximate result of the same conduct, Plaintiff JOANN AYERS suffered loss of consortium, including loss of companionship, affection, society, emotional support, and marital relations.

132. JAYERS further suffered economic damages, including loss of household income, loss of employment-related benefits, and financial security previously provided by Plaintiff's employment.

133. The damages suffered by JAYERS are foreseeable, compensable, and recoverable under applicable federal and Idaho law as derivative damages arising from Defendants' unlawful acts.

134. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the following damages:

   a. Past and future lost wages, salary, and employment benefits;

   b. Loss of earning capacity and career advancement;

   c. Emotional distress, humiliation, and mental anguish;

   d. Reputational harm;

   e. Loss of consortium suffered by Plaintiff JOANN AYERS, including loss of companionship, affection, care, comfort, and marital relations;

f. Economic losses suffered by Plaintiff JOANN AYERS, including loss of household

income and employment-related benefits; and

g. Other damages according to proof at trial.

**135.** ZAYERS served a Notice of Tort Claim to all the parties requiring such Notice which is

attached as Exhibit 1 hereto.

## V. FIRST CAUSE OF ACTION FOR VIOLATION OF 42 USC §1983.
### (Against SC, SCBOCC, and SCPW)

**136.** ZAYERS incorporates by reference all foregoing Paragraphs as though they are fully set

forth herein.

**137.** All conduct set out above is alleged hereafter as the conduct of them all as the individuals

acted within the scope of their employment and pursuant to respondeat superior as the

supervisors of the individuals failed to supervise and train their employees and all shall be

referred to hereafter as SC.

**138.** ZAYERS was terminated for exercising his protected speech in violation of the United

States Constitution 1st Amendment and the Idaho Constitution Article I Section 9 for

whistleblowing in that, while off duty, he informed SC that Rich Rauch, was diverting

County assets to his own personal use to include diesel fuel; hand tools such as chain saws

and mechanics tools; and heavy equipment such as a cherry picker attachment.

**139.** ZAYERS was terminated for exercising his 1st Amendment right to free speech for

whistleblowing in that he informed SC that HECLA was violating the State of Idaho and

EPA laws by their failure to secure their loads causing heavy amounts of silica (hazardous

waste) to be deposited on the County roads and in the South Fork of the Coeur d'Alene

River drainage in and around HECLA endangering the County workers and citizens of

Shoshone County, Idaho and caused mechanical problems with County equipment.

**140.** ZAYERS was terminated for exercising his free speech for whistleblowing in that he informed SC that JSTUTZKE's employing CASON to inspect the Tank Creek bridge was wrong because he did not have the qualifications for such inspections and further that CASON'S inspection report was wrong because the bottom and top of the bridge had to be replaced and the repairs recommended by CASON would place all who used the bridge including he, his family and the public in danger because the bridge would fail.

**141.** ZAYERS was terminated for exercising his protected free speech for whistleblowing because he confronted SC about wasting SC funds in hiring CASON and stated it was JSTUTZKE's duty to inspect the bridge and make repair recommendations.

**142.** Gem Bridge was to be replaced as a result of a Grant the County received. The Grant was required to be published so other companies could submit a bid however JSTUTZKE and SC did not advertise the project pursuant to law seeking bids for the project and accepted a bid from CASON without the opportunity by the other companies to submit bids for the same.

**143.** ZAYERS was terminated for exercising his free speech for whistleblowing in that he confronted SC about failing to present the same scope of project to all bidding companies and wasted County funds, time and labor because the other companies and or the other companies who may have bid to an advertised project had it been advertised as required by law may have came back with a lower bid saving the County money.

**144.** ZAYERS believes that his efforts to call out the wasting of County assets and calling into question violations of the EPA and or PH and or the IDEQ by HECLA caused him to be terminated as a result of his exercise of freedom of speech.

**145.** Because of ZAYERs' wrongful termination and SC's slander and defamation of him, ZAYERS have been forced to sell personal property, including personal vehicles, in order to pay for living and medical expenses, including the medical expenses for their adopted autistic son and their daughter.

**146.** The above free speech reporting by ZAYERS are protected activities under Idaho Law and Federal Law and were made while off duty.

**147.** SC was acting under color of law.

**148.** ZAYERS engaged in protected speech as a citizen on matter of public concern.

**149.** ZAYERS termination was caused by the official policies, customs, and practices to include retaliation against whistleblowers, failure to protect employees reporting environmental hazards, and ratification of unconstitutional conduct by final policymakers.

**150.** These above policies were a moving force behind the constitution violations by SC.

**151.** SC took adverse employment action against ZAYERS.

**152.** ZAYERS' speech was a substantial and motivating factor in SC's conduct.

**153.** Defendants, acting under color of state law, subjected Plaintiff to a retaliatory hostile work environment in response to Plaintiff's protected speech.

**154.** Defendants' retaliatory conduct included, but was not limited to:

a. Instructing a subordinate employee to generate false allegations;

b. Knowingly relying on false information in disciplinary actions;

c. Harassment, intimidation, and undermining Plaintiff's supervisory authority;

d. Threats of termination and increased scrutiny not applied to similarly situated employees.

**155.**   The retaliatory harassment was severe and pervasive, such that it would deter a person of ordinary firmness from engaging in protected speech

**156.**   Defendants' actions were intentional, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights

**157.**   Defendants Shoshone County and the Shoshone County Board of County Commissioners are liable because the retaliatory conduct was:

  a. Carried out by final policymakers;

  b. Ratified by policymakers after notice of the misconduct;

  c. Consistent with an established custom or practice of retaliating against whistleblowers.

**158.**   As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered economic loss, emotional distress, reputational harm, and loss of career opportunities.

**159.**   Defendants retaliated against ZAYERS as a result of his protected exercise of his free speech and conspired with each other as to the termination of ZAYERS.

**160.**   As a direct and proximate result of Defendant's actions and/or failure to act, ZAYERS and JAYERSs suffered and will continue to suffer emotional distress.

**161.**   As a direct and proximate result of Defendant's actions and or failure to act, ZAYERS and JAYERS have suffered a loss in earnings and other employment benefits and job opportunities and are entitled to general compensatory damages in an amount to be proven at trial, as well as any other equitable remedies available to them.

**162.** Defendant's conduct was willful or done with reckless disregard for Plaintiff's State and Federally protected rights for which Plaintiffs are entitled to punitive damages pursuant to 42 USC §1981a(a).

**163.** Plaintiffs' damages exceed One Million Dollars ($1,000,000.00).

### VI. SECOND CAUSE OF ACTION FOR VIOLATION OF 42 USC §1983.
### (Against JSTUTZKE, DDOSE, and JZIMMERMAN
### in their individual capacities)

**164.** ZAYERS incorporates by reference all foregoing Paragraphs as though fully set forth herein.

**165.** ZAYERS' First Amendment rights were clearly established.

**166.** Defendants personally participated in retaliatory termination.

**167.** No reasonable official could believe such conduct was lawful.

**168.** Qualified immunity does not apply.

**169.** Defendants are liable for compensatory and punitive damages that exceed One Million Dollars ($1,000,000.00.)

### VII. THIRD CAUSE OF ACTION
### (Wrongful Termination/Retaliation under 42 U.S.C. §6971 Against SC, SCBOCC, and
### SCPW and Against JSTUTZKE, DDOSE, and JZIMMERMAN in their individual
### capacities)

**170.** ZAYERS incorporates by reference all foregoing Paragraphs as though they are fully set forth herein.

**171.** ZAYERS engaged in protected activity by reporting the improper disposal of hazardous mine waste to the EPA and Defendant's internal compliance channels.

**172.** Defendants, knowing of ZAYERS' protected activity, terminated Plaintiff's employment in retaliation for reporting environmental violations.

**173.** Defendant's actions constitute a violation of 42 U.S.C. § 6971(a), which prohibits discharge or discrimination against employees who report violations of RCRA.

**174.** As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages and benefits, emotional distress and reputational harm, and other consequential damages to be proven at trial.

**175.** JAYERS claims the same damages arising out of her husband's ZAYERS' wrongful termination as set forth above.

**176.** Said damages exceed One Million Dollars ($1,000,000.00)

**VIII. FOURTH CAUSE OF ACTION FOR DEFAMATION BY SLANDER AND LIBEL**

**177.** AYERS incorporates by reference all foregoing Paragraphs as though fully set forth herein.

**178.** ZAYERS was employed at SC at all relevant times.

**179.** Defendants made false statements of fact about ZAYERS honesty, integrity, and professional conduct.

**180.** Defendants published the statements to third parties, including individuals with authority over ZAYERS' employment with the intent to harm ZAYERS to cause him to be terminated from his employment with SC and harm his professional reputation.

**181.** Defendants' statements include without limitation:

    a. SC has falsely accused ZAYERS of acting, omitting acts, or otherwise having performed in ways which are contrary to the expectations and standards of conduct of the County.

    b. ZAYERS was utilizing County equipment for his own personal use without permission.

    c.   ZAYERS was utilizing County equipment and County Shop to work on his personal boat when in fact the boat at the County shop was owned by Jim Rolletto and being worked on by CASON-then acting SCPW Director without permission or authorization.

    d.   ZAYERS performed unauthorized work on an ambulance for the SC during work hours for pay.

    e.  ZAYERS utilized a county vehicle to tow a personal trailer carrying his personal lawnmower during work hours when in fact he was taking his lawnmower to Gene Day Park to be used by the County employee as the SC lawn mower had ran out of fuel.

**182.** Defendants acted with actual malice or reckless disregard for the truth.

**183.** Defendants' defamatory statements directly and proximately caused ZAYERS' termination and other damages.

**184.** Because of Defendants' defamatory statements of him, he has been unable to find suitable, comparable employment, and his ability to obtain such employment has been and will continue to be substantially impaired.

**185.** These statements were made to third parties to include TRACY CASADY, DDOSE, JZIMMERMAN employees of the SCPW District 3 and Marble Creek shop as well as other Public Works potential employers within the State of Idaho and have caused significant harm to Plaintiff's reputation.

**186.** As a result of Defendant's defamatory statements, Plaintiff has suffered economic damages and emotional distress.

**187.** As a direct and proximate result of Defendant's actions and/or failure to act, ZAYERS and JAYERSs suffered and will continue to suffer emotional distress.

**188.** As a direct and proximate result of Defendant's actions and or failure to act, ZAYERS and JAYERS have suffered special damages including a loss in employment, wages, employment benefits and future professional job opportunities.

**189.** ZAYERS and JAYERS are entitled to general compensatory damages for humiliation, emotional distress, and reputational harm in an amount to be proven at trial, as well as any other equitable remedies available to them.

**190.** Defendant's conduct was willful or done with reckless disregard for Plaintiff's State and Federally protected rights for which Plaintiffs are entitled to punitive damages pursuant to USC §1981a(a) and or IC§ 6-1604 and or IC 18-4801 and or IC 18-4802.

**191.** Said damages exceed One Million Dollars ($1,000,000.00).

## IX. FIFTH CAUSE FOR DAMAGES CIVIL CONSPIRACY

**192.** AYERS incorporate all prior paragraphs herein as though full set forth herein.

**193.** Defendants agreed, combined, and conspired to defame ZAYERS and to influence his termination for reporting environmental hazards.

**194.** The agreement included coordination, communication, and joint decision-making regarding discipline and termination of ZAYERS

**195.** The primary purpose of the conspiracy was aimed to deter, punish, and silence ZAYERS for exercising rights secured by the First Amendment, including the right to speak as a citizen on matters of public concern and to petition the government for redress of grievances.

**196.** Defendants acted with specific intent to interfere with ZAYERS" constitutional rights, not merely with incidental or negligent effect.

**197.** At least one overt act was taken in furtherance of the conspiracy, including making statements to supervisors and other employees and initiating approving and ratifying termination.

**198.** Defendants' acts were class-based, invidiously discriminatory animus against whistleblowers and those reporting environmental violations, or alternatively, with intent to suppress constitutional rights and or in the alternative Defendants conspired to interfere with ZAYERS' right to petition the federal government, a right independently protected against private and public conspiracies under 42 U.S.C. §1985.

**199.** Defendants harbored hostility and animus toward this class because such reporting:

   a. Exposed County failures and environmental hazards;

   b. Threatened political and economic interests tied to mining operations; and

   c. Invited federal scrutiny and potential liability.

**200.** Defendants' actions were not isolated but reflected a broader pattern of hostility toward whistleblowers and environmental reporters within County operations.

**201.** Each Defendant acted outside the scope of legitimate governmental duties by intentionally violating ZAYERS' constitutional rights'

**202.** Defendants acted with independent personal motivations, including protecting political standing, avoiding scrutiny, and shielding third-party mining interests; and

**203.** The conspiracy involved discrete, intentional acts taken for unlawful purposes, not routine employment decisions.

**204.** ZAYERS was injured in his person and property, including loss of employment, income, professional standing, and emotional well-being.

**205.** ZAYERS' injuries were the direct and proximate result of Defendants' conspiracy

**206.** Defendants are liable under 42 U.S.C. 1985(3) and 1988.

**207.** As a direct result of the conspiracy, Plaintiff JAYERS suffered the same damages outlined above, including loss of consortium.

## X. SIXTH CAUSE OF ACTION-LOSS OF CONSORTIUM

**208.** JAYERS incorporates all prior paragraphs herein.

**209.** As a direct and proximate result of Defendants' wrongful acts:

> a. JAYERS suffered loss of consortium, companionship, society, and support;

> b. JAYERS suffered loss of financial support, household benefits, and access to SC insurance and retirement benefits;

> c. JAYERS suffered emotional distress related to ZAYERS' termination.

## XI. ITCA AND DISCRETIONARY IMMUNITY ASSERTIONS

**210.** AYERS incorporate all prior paragraphs herein.

**211.** AYERS plead this Complaint without conceding any immunity.

**212.** In the event Defendants assert the Idaho Tort Claims Act (ITCA) or discretionary immunity, Plaintiffs allege that:

a. Defendants' statements were malicious and ultra vires;

b. The statements were made outside the scope of legitimate governmental functions;

c. The conduct alleged is not shielded by discretionary immunity under Idaho Code § 6-904, which does not protect torts committed in bad faith, with malice, or with intent to harm;

d. Defendants acted in an individual capacity or beyond their official authority, such that ITCA immunity does not apply.

213. Plaintiffs specifically allege that Defendants' conduct was motivated by retaliation, personal animus, and intent to interfere with employment, rather than by any policy-making or discretionary function.

214. Plaintiff further reserves the right to amend this complaint to request punitive damages against all those Defendants as allowed by law pursuant to law.

## XI. DEMAND FOR JURY TRIAL

PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF NOT LESS THAN TWELVE PERSONS OF ALL MATTERS TRIABLE BY JURY.

## IX. ATTORNEY FEES AND COSTS

As a consequence of Defendants' actions and failures to act as set forth herein, Plaintiff has been forced to retain the services of legal counsel to protect his rights and has incurred attorney's fees to accomplish that end. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. §1988 and any other applicable statute.

**WHEREFORE**, having set forth a cause of action against Defendants, Plaintiff prays for relief as follows:

1. For declaratory judgment that Defendants violated ZAYER' constitutional rights and therefore unlawful under the First Amendment under the Constituion;

2. ZAYERS be reinstated as SCPW District 3 road supervisor;

3. Reinstatement or front pay;

4. Injunctive relief prohibiting further retaliation;

5. Award damages for retaliatory hostile work environment under federal law;

6.      Award punitive damages against individual Defendants for willful constitutional violations;

7.      Plaintiff be awarded general, special and other damages against Defendants for personal injury incurred as a result of the negligent and tortious conduct of Defendants in an amount to be determined at trial;

8.      Punitive damages against individual Defendants;

9.      Plaintiff be awarded damages for costs and attorney fees reasonably incurred in pursuit of this action under 42 U.S.C. §1988;

10.     Plaintiff be awarded damages for prejudgment interest at the highest rate allowable by Idaho law;

11.     Plaintiff be awarded damages for post-judgment interest on the entire judgment inclusive of costs and attorney fees until such time as said judgment is satisfied in full.

12.     Plaintiff be awarded such other and further relief as the court deems just and equitable.

DATED this _18th_ day of December, 2025.

MADSEN LAW OFFICES, P.C.
Attorney for Plaintiff


By:    _//s//: Henry D. Madsen_
        HENRY D. MADSEN

VERIFICATION

STATE OF IDAHO                    )
                                 : ss
County of Kootenai               )

I, ZACK AYERS, do hereby depose and state that I have read the foregoing Complaint,

know the contents thereof, and believe them to be true.

DATED this 13 day of October, 2025.

ZACK AYERS

SUBSCRIBED AND SWORN to before me this 13 day of October, 2025.

Notary Public for the State of Idaho
Residing at: Benewah City
My Commission Expires: 8/22/29

JAN MADSEN
COMMISSION # 45082
NOTARY PUBLIC
STATE OF IDAHO
MY COMMISSION EXPIRES 08/22/2029

VERIFICATION

STATE OF IDAHO                    )
                                 : ss
County of Shoshone               )

I, JOANN AYERS, do hereby depose and state that I have read the foregoing Complaint,

know the contents thereof, and believe them to be true.

DATED this 13 day of October, 2025.

JOANN AYERS

SUBSCRIBED AND SWORN to before me this 13 day of October, 2025.

Notary Public for the State of Idaho
Residing at: Benewah
My Commission Expires: 8/22/29

JAN MADSEN
COMMISSION # 45082
NOTARY PUBLIC
STATE OF IDAHO
MY COMMISSION EXPIRES 08/22/2029

COMPLAINT.42 USC 1983-18

## NOTICE OF TORT CLAIM

To:    **SHOSHONE COUNTY**
**BOARD OF COUNTY COMMISSIONERS**
**700 Bank St. Ste. 120**
**Wallace, Idaho 83873**

       **SHOSHONE COUNTY PUBLIC WORKS**
**DIRECTOR: Jessica Stutzke**
**700 Bank Street, Ste. 35**
**Wallace, Idaho 83873-2348**

       **SHOSHONE COUNTY PROSECUTING ATTORNEY**
**Ben Allen**
**700 Bank St. Ste. 200**
**Wallace, Idaho 83873**

NOTICE IS HEREBY GIVEN pursuant to Idaho Code § 6-901, *et seq*., of the personal injury; I.C.6-2104; and 28 USC 1983 wrongful termination and whistleblower claims and slander and defamation and or other claims of Zack and Joann Ayers as a result of the tortuous conduct of Shoshone County Public Works, by and through the Ayers attorney of record, Henry D. Madsen of MADSEN LAW OFFICES, P.C.

These claims are against Shoshone County, State of Idaho including, but not limited to, Shoshone County Public Works Department (hereinafter collectively referred to as "Shoshone County"), its agents and employees for injuries and damages Zack and Joann Ayers sustained from the wrongful termination of Zack Ayers on December 21, 2023.

Said damages to Zack and Joann Ayers are as a result of the wrongful termination of Zack Ayers employment with Shoshone County Public Works, on December 21, 2023, and include monetary damages, loss of his employment, loss of earnings, loss of earning capacity, concern about future employability, pain and suffering, enduring mental anguish, emotional distress, disruption of their personal life, and loss of enjoyment of life.

By reason of wrongful termination, Zack and Joann Ayers have been deprived of the salary Zack Ayers, who is only 50 years of age, would have received for the remainder of his

NOTICE-1

EXHIBIT 1 Page 1 of 8

working life to age 65, a salary of approximately $54,000.00 a year plus cost of living raises averaging 3% per year totaling $1,034,471.59, longevity raises at .43 cents per hour, long-term care raises of $2.00 per hour, time raises averaging .45 cents an hour, approximately 200 hour comp time averaging $5,102.00 per winter and totaling $76,530.00, medical insurance of $21,600.00 per year totaling $324,000.00, dental insurance at $1,260.00 per year totaling , public employee retirement system of Idaho benefits at $6,180 a year totaling $92,700, paid phone service of $495.00 a year totaling $7425.00, truck transportation year round, and a Social Security Reflection on wages at approximately $500.00 a month with $90,000.00 to retire.

     Zack Ayers was terminated in violation of I.C.6-2104 for whistleblowing in that he informed Jessica Stutzke that Rich Rauche, Marble Creek Public Works Shop employee and Road Supervisor, was diverting County assets to his own personal use to include diesel fuel; hand tools such as chain saws and mechanics tools; and heavy equipment such as a cherry picker. Further, Zack Ayers complained to Jessica Stutzke and the Board of County Commissioners that she was wasting a snow removal roads project grant by ordering vehicles that would not meet the requirements of Shoshone County's snow removal.  Further, Zack Ayers was wrongfully terminated because he informed Jessika Stutzke that Hecla was violating the EPA laws by their failure to secure their loads causing heavy amounts of silica (hazardous waste) to deposit on the County roads in and around the Hecla Mine endangering the County workers and citizens of Shoshone County, Idaho and causing mechanical problems with County equipment.  Lastly, that Zack Ayers informed Stutzke that her employing Jim Cason to inspect the Tank Creek bridge was wrong because he did not have the qualifications for such inspections and further that Cason's inspection report was wrong because the bottom and top of the bridge had to be replaced. Zack Ayers and Bruce VanBroeke went to the bridge drilled it and found that the bottom layer of the bridge was rotten and had to be replaced also.  Zack confronted Stutzke about wasting Shoshone County funds in hiring Cason and stated it was her duty to inspect the bridge and make recommendations as to repair of the same.  Lastly, Gem Bridge was to be replaced as a result of a Grant the County received.  The Grant was required to be bid out by companies and Stutzke advertised the project seeking bids for the project but it came of knowledge that Stutzke accepted a bid from Cason without the opportunity by the other companies as to Shoshone County's involvement with the project.  The bids advertised to the general public required the other companies to supply the materials and equipment, and required them to do all the hauling.

NOTICE-2

EXHIBIT 1 Page 2 of 8

However, the project description submitted to Cason stated the County would provide all materials and equipment and would do all hauling. Based upon the description of the bid to him, Cason made a bid of $50,000.00 which Stutzke accepted. Ayers was informed by Stutzke that Cason's bid was accepted and he and his crew would be required to use County equipment and manpower as needed and at Cason's discretion to complete the project. Ayers confronted Stutzke about failing to present the same scope of project to all bidding companies and wasting County funds, time and labor because the grant money was to cover the full project without County involvement. Ayers believes that his efforts to call out the wasting of County assets and calling into question violations of the EPA by Hecla caused him to be terminated.

   Because of Zack Ayers' wrongful termination and the County's slander and defamation of him, he has been unable to find suitable, comparable employment, and his ability to obtain such employment has been and will continue to be substantially impaired.

   Because of Zack Ayers' wrongful termination and the County's slander and defamation of him, Zack and Joann Ayers have been forced to sell personal property, including personal vehicles, in order to pay for living and medical expenses, including the medical expenses for their adopted autistic son and their daughter.

   The compensation sought by Zack and Joann Ayers is such an amount as the trier of fact shall award as reasonable and proper against Shoshone County. For the purpose of complying with the requirements of the Idaho Code § 6-907, and to assure Zack and Joann Ayers are not prohibited from bringing all lawful and just claims, said compensation is claimed to be in excess of One Million ($1,000,000.00) Dollars.

   The persons who are known or believed to be witnesses and or have information as to the wrongful termination of Zack Ayers are:

- Shoshone County District #1 Fire Chief John Miller who will testify that the claims that Mr. Ayers had been working on ambulances during his working time for the County Road Department are not true. Chief Miller was the primary contact to Mr. Ayers for District One Fire and one of the primary contacts for District Two Fire when a SCASD vehicle needed repair or maintenance and that anytime work on an ambulance was needed Zack would inform the fire districts to drop the ambulance off at the country yard in Osburn by 3 p.m. To the best of his knowledge, Mr. Ayers has not worked on any ambulances during business hours,

EXHIBIT 1 Page 3 of 8

and the fire district was pleased with his work and will continue to use him when needed for routine maintenance.

- Shoshone County Fire Chief Scott Dietrich, who will testify that the claim that Mr. Ayers was working on ambulances during his full-time job at the County Road Department is untrue. Chief Dietrich oversees the scheduling of repairs and maintenance for Fire District #2. He will testify that Zack Ayers instructed both fire department District #1 and #2 to deliver the ambulances to the County Yard in Osburn by 3 p.m. after his working hours so he could complete the service and get the ambulances back in to service. Chief Dietrich will testify as to the importance of having Zack Ayers contract for maintenance on the Shoshone County Ambulance Service vehicles in place, as well as to the hard work, timely maintenance and repairs, and dedication Zack has provided this local service on his off time after working a full day's work and putting their ambulances back into service.

- Carrie Simmons of Shoshone County Fire District #1 and #2 who will testify that she assisted the Fire Chiefs in scheduling and reporting issues that arise with ambulances, and that she contacted Zack Ayers by call or text to give the most direct information regarding the need for repairs on ambulances. She will testify that Mr. Ayers has always instructed the fire crew to drop off the ambulances after hours for him to work on after his daily working hours for the county, and that Mr. Ayers has worked extremely hard to service the ambulances to get them back into service for the fire districts to serve and protect the community.

- Arnold Keefer who worked for Shoshone County Public Works Department for 15 years who will testify that when he worked there employees were allowed to bring into the shop, their own vehicles to work on after shifts were over. He will also testify that sometimes, if using the hoist, employees would bring vehicles into the shop before shift was over to have a little help to line up on the hoist, and sometimes to dry them out or warm up in winter before working on the vehicles when shift was over. He will also testify that the mechanic also would bring

NOTICE-4

EXHIBIT 1 Page 4 of 8

vehicles in during the last ½ hour or so, other vehicles that he worked on other than County or his own and was always allowed to as long as it did not interfere with County responsibilities. Search and rescue vehicles and snow groomers were some of the other vehicles that would come into the County shop after hours.

- Former County Commissioners of Shoshone County, John Hanson and Jay Huber who will testify together that they remember that with approval of the shop Supervisor, employees were allowed to work on their own project using the County shop after hours and on weekends and if needed, manpower and equipment were used to help as much as time and equipment were available to maintain the Fish Hatchery above Mullan.

- Loren Clemons, Roads Supervisor and Mechanic for the District III shop and volunteer for Search and Rescue and District #1 Fire Department who will testify that he was allowed to use the shop for minor repairs and servicing County owned vehicles after hours during his employment there.

- Shoshone County Public Works employee Christopher Morris who will testify that in his 13 years of working for Shoshone Public Works, he has done numerous jobs at and around the Fish Hatchery for the County and will elaborate on details of those jobs.

- Shoshone County Public Works employee Bruce Van Broeke who will testify that he has used the County shop after hours to work on his own personal vehicles, and was told by his supervisor that if he cleaned up and used his parts and put things away it was okay. He will also testify that he lives near the Hale Fish Hatchery for the past 33 years and the whole time Shoshone County Public Works would help out fixing or maintaining various things and provide details of the projects that were worked on. Mr. Van Brooke has also worked as a Fire District #3 Chairman Commissioner, a volunteer fire training officer for Mullan, and as a board member for The Sportsman's Association.

- Jim Cason, former Public Works Administrator for Shoshone County will testify as to his projects with Shoshone County and his use of County assets for his personal use while working there.

NOTICE-5

EXHIBIT 1 Page 5 of 8

- Dave Dose Commissioner was present when Stutzke placed Ayers on paid administrative leave and Ayers informed Dose about the pictures which Stutzke used to support her claims against Ayers as to how she was wrong and that the photo of the boat in the picture was not his.  Was there during the meeting as to the Snow Removal Grant wherein Ayers informed him and the other members of the Board of County Commissioners as to Stutzke' plan to waste the proceeds of the snow removal grant and other errors made by Stutzke as to planned projects for the County.
- Jeff Zimmerman, County Commission would testify to the project meetings.
- Jessica Stutzke would testify as to all the above.
- Stephanie Featherstone, Stutzke's assistant.
- Owen Clancy employee under Zack Ayers who it is believed was taking pictures of the District III shop for Stutzke.
- Brad Young Road Supervisor Marble Creek complained to and informed Ayers of the theft of diesel, tools and equipment.
- Todd Hanson, Lead Man/operator Marble Creek complained about Rauche's theft of diesel, tools; and equipment to Ayers who informed Stutzke
- Rich Rauche, theft of County assets and the use of County assets for his own personal use.
- Danny Carney District II Smelterville ordered snow removal vehicles as instructed by Stutzke.
- Rick Dooney District IV road supervisor Murray Idaho ordered snow removal vehicles as instructed by Stutzke.
- Frosti Greenfield, past public works director will testify as to the scope of work of District IV and the use of County assets by the employees.
- Jim Rolletto, CDA Idaho, Shoshone County Engineer will testify that it was his boat which was in the District III office being worked on by Jim Cason who was the public works director.
- Tammy Everhart, retired accountant labeled as HR who attempted to provide a Ayers with a copy of his employment records and found that they were not located in the secured file cabinet.

NOTICE-6

EXHIBIT 1 Page 6 of 8

- Shawn Leroy Courthouse Security was present during the meetings between Ayers, Stutzke, and Dose and the meeting between Ayers, Stutzke and Commissioner Zimmerman when Zack was terminated.
- Jay L Huber, Shoshone County Commissioner will testify as to how good of a job Zack Ayers did and the history of Shoshone County employees use of County assets.
- John Hanson, Commissioner Shoshone County would testify to the same as Jay Huber.
- Matt Beehner, Woodland Park, Wallace Idaho will testify as to his knowledge and research as to all the above.
- Any and all witnesses which may be deemed necessary in pursuance of this tort claim.

Zack Ayers currently resides on 2360 Larson Road, Mullan, ID 83849 and has resided at this address for the six (6) months preceding the date on which the claim arose.

DATED this ____ day of March, 2024.

MADSEN LAW OFFICES, P.C.

By: _____
Henry D. Madsen
Attorney for Zack Ayers
1044 Northwest Blvd., Suite B
Coeur d'Alene, Idaho 83814-2636

NOTICE-7

EXHIBIT 1 Page 7 of 8

VERIFICATION

STATE OF IDAHO              )
                           )ss.
County of Benewah          )

I, Zack Ayers, being first duly sworn upon oath, depose and state as follows:

I have read the foregoing **Notice of Tort Claim** and I believe the contents thereof to be true and correct to the best of my information, knowledge and belief.

Zack Ayers

SUBSCRIBED AND SWORN TO this ⁄ day of March, 2024.

JAN MADSEN
COMMISSION # 45082
NOTARY PUBLIC
STATE OF IDAHO
MY COMMISSION EXPIRES 08/22/2029

Notary Public for the State of Idaho
Residing at: Benewah Cty

NOTICE-8

EXHIBIT 1 Page 8 of 8